UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRENDA P. GOODSON, ET AL.,    Case No.: 1:13-cv-502

        Plaintiffs,    Judge Michael R. Barrett

v.

MILLENNIUM & COPTHORNE HOTELS,
PLC D/B/A MILLENNIUM HOTEL, ET AL.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendants Millennium & Copthorne Hotels, PLC d/b/a Millennium Hotel and Cincinnati, S.I. Co. (collectively, "Defendants"). (Doc. 23). Plaintiffs Brenda Goodson and Edward Goodson have filed a response in opposition (Doc. 28), and Defendants have filed a reply (Doc. 29). This matter is now ripe for review.

## I.    FACTUAL BACKGROUND

Defendants own and operate the Millennium Hotel in downtown Cincinnati, which is located at 150 West Fifth Street (the "Hotel"). (Doc. 23-1, PageId 252).[1] The Hotel has two main public entrances: one on the south side of the building on West Fifth Street ("the West Fifth Street Entrance") and one on the north side of the building at the southeast corner of Elm Street and West Sixth Street ("the Sixth Street Entrance"). (Doc. 29-1, PageId 431-32). The Fifth Street Entrance consists of a partially-covered valet drive. (Id.). The Sixth Street Entrance

---

[1] Defendant Millennium & Copthorne Hotels PLC d/b/a Millennium Hotel operates the hotel while Defendant S.I. Co. owns the real property. (Doc. 23-1, PageId 252).

consists of a valet drive in the shape of a half circle ("the Valet Drive"). (Id., PageId 432). On the outside border of the Valet Drive, there is a pedestrian sidewalk that creates a curb between the Valet Drive and the pedestrian sidewalk at certain points. (Id.). The Sixth Street Entrance has built-in lights that remain lit at all times. (Id., PageId 432, 436).

Close to where the Valet Drive and the pedestrian sidewalk meet Sixth Street, the distance between the pedestrian sidewalk and the Valet Drive at the West Curb is nearly zero inches. (Doc. 29-1, PageId 432). Closer to the Hotel's door, the distance between the pedestrian sidewalk and the Valet Drive at the West Curb rises to two or three inches. (Id.). As shown by the photograph of the West Curb, there are joints in the pedestrian sidewalk that run perpendicular to and end at the Valet Drive and the West Curb is the color of concrete. (Doc. 29-1, PageId 432, 436). The photograph also reflects some yellow writing on the pedestrian sidewalk parallel to the West Curb. (Doc. 29-1, PageId 433, 436).

The other three curbs near the Sixth Street Entrance are between four and six inches high. (Doc. 29-1, PageId 433). Those curbs each had a yellow strip of paint on them as of June 21, 2011. (Id.).

From June 20, 2011 through June 22, 2011, Plaintiffs Brenda and Edward Goodson were out-of-town guests from Fairfax, Virginia, staying at the Hotel with friends. (Doc. 21, PageId 74-75). That was the third time the Goodsons had stayed at the Hotel. (Id.). During their stays at the Hotel, Brenda Goodson had previously used the Hotel's West Fifth Street Entrance, but she had never entered the Hotel through the Sixth Street Entrance. (Doc. 21, PageId 85, 88-89, 92, 162). Edward Goodson, however, had used the Sixth Street Entrance previously. (Doc. 22, PageId 186, 192-95).

On June 21, 2011, however, the Goodsons returned in their vehicle with their friends to the Hotel in the early evening, proceeding directly to the garage across the street from the Sixth Street Entrance of the Hotel to park their vehicle. (Doc. 21, PageId 93-94; Doc. 20, PageId 190). At that time, it was still light outside. (Doc. 21, PageId 93-94, 101; Doc. 20, PageId 190-91). It was not overcast, there was no moisture on the ground, and Brenda Goodson was wearing sandals. (Doc. 21, PageId 100). From the parking garage, the group walked from the northwest corner of Elm Street and Sixth Street, to the northeast corner, and then to the southeast corner where the Sixth Street Entrance is located. (Doc. 21, PageId 93-94, 96-97; Doc. 23-2, PageId 302). The group next entered the canopied area of the Sixth Street Entrance from a point near the intersection of Elm Street and Sixth Street. (Doc. 21, PageId 97-98; Doc. 23-2, PageId 302). Edward Goodson and one of the friends were walking together about ten feet ahead of Brenda Goodson and another friend who were walking side by side. (Doc. 21, PageId 97-98). Shortly after entering the canopy area, Brenda Goodson's foot stepped awkwardly on a point on the West Curb. (Id., PageId 98-99). To try to regain her balance, she quickly put down her right foot. (Id.). Her right foot buckled, causing her to fall into the Valet Drive on her hip. (Id., PageId 99-100). As a result of the fall, Brenda Goodson sustained injuries, which included a broken right ankle. (Id., PageId 126).

Edward Goodson heard Brenda Goodson scream. (Doc. 22, PageId 193). When he turned around, he saw her on the ground. The EMTs were called. (Doc. 21, PageId 103-04). While waiting for the EMTs to arrive, Brenda Goodson viewed the location where she had fallen, and realized at that time that there was a change in elevation from the pedestrian sidewalk to the Valet Drive. (Id., PageId 106, 116). She testified that she was able to identify the location of her fall because she was unable to move due to her injuries, but admitted that her identified

3

location may not be exact. (Id., PageId 112, 117). Brenda Goodson testified that the lighting in the canopy was dim, and she noticed that the area around her was not bright. (Id., PageId 164). The location at the West Curb where Brenda Goodson testified she may have tripped was between two and three inches. (Doc. 29-1, PageID 433). Just a few inches closer to Sixth Street from that point, the West Curb is less than two inches in height. (Id.). Brenda Goodson admitted that she was not completely sure of the location and it could have been closer to Sixth Street. (Doc. 21, PageId 113-15, 117).

Edward Goodson likewise noticed that there was a difference in height between the pedestrian sidewalk and the Valet Drive. (Doc. 20, PageId 203). He further noticed that the West Curb was not painted yellow while other curbs were so painted, and that underneath the canopy was a little darker than outside the canopy. (Id., PageID 194, 196, 204).

In the past twenty years, there have been no other trips, falls, or accidents involving pedestrians at the Sixth Street Entrance, including the West Curb, even though the Hotel's preferred parking garage for its guests who do not use valet is located northwest of the Hotel where the Goodsons parked their vehicle. (Doc. 23-1, PageID 254).

The Goodsons filed the Complaint against Defendants in June 2013, which was removed to this Court in July 2013. (Docs. 1, 2). In the Complaint, Brenda Goodson asserts a negligence claim against each Defendant, and Edward Goodson asserts a claim for loss of consortium against both Defendants. (Doc. 1).

During discovery, the Goodsons disclosed an expert witness, James Sobek. Mr. Sobek is a professional engineer and is employed as an accident analyst. (Doc. 26, PageId 356). He identifies his areas of specialized knowledge, skill, experience, training, and education as "human vision, lines-of-sight, lighting, optics, and visibility/conspicuity[.]" (Id.). With respect

4

to the date and time of Brenda Goodson's fall, he opines: (1) that "the various structures in the area of this incident created a complex of shadows from the low sun in the northwest that would have severely hampered a pedestrian's ability to see that there was an elevation difference between the sidewalk and driveway surface where this incident occurred;" (2) that "the lighting to the area where Ms. Goodson fell, while sufficient to stimulate fine detail color vision, did not cast shadows that would convey the elevation difference between the sidewalk and driveway surfaces;" (3) that "at the location where Ms. Goodson stepped onto the driveway surface, the elevation difference between the sidewalk and the driveway surface was indistinguishable even at times when the sun was not casting complicating shadows;" (4) that "the color, brightness and texture of the sidewalk and driveway surface were so similar that the elevation transition between the two was indistinguishable to anyone who did not already know that it was there;" (5) that the sidewalk "does not have a curved line as typically seen where the curb is poured as a separate element," and that "such a line serves as one form of visual warning as to the presence of a raised curb," and that "the lack of such a line served to further camouflage the fact there was an elevation difference between the sidewalk surface and the driveway surface;" (6) that "there were no high contrast linear features such as pavement cut lines that were continuous across the sidewalk and driveway surfaces that might have provided visual cues of the elevation difference between the two surfaces;" and (7) that "a visual warning of the hazard that existed should have been created by painting a yellow band on the sidewalk edge all along the west edge of the north-south driveway."  (Doc. 26, PageId 357-58; Doc. 26-3, PageId 376-81).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

5

56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if its resolution affects the outcome of the suit.  *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 249.  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## III. ANALYSIS

Defendants move for summary judgment on all of Plaintiffs' claims, which include claims for (1) landowner negligence; and (2) loss of consortium.

### A. Negligence Claims

Plaintiffs asserted two negligence claims in the Complaint, one against Millennium Hotels and one against Cincinnati, S.I. Co.  Those two claims are discussed simultaneously.

When asserting a negligence claim under Ohio common law, a plaintiff must show that the defendant owed a duty of care of the plaintiff, that the defendant breached that duty, and that

6

the breach proximately caused the plaintiff's injuries. *Mid-Continent Ins. Co. v. Coder*, 563 F. App'x 422, 427 (6th Cir. 2014) (citing *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St. 3d 120 (2009)). Defendants have moved for summary judgment on the issue of duty.

Under Ohio premises liability law, a landowner's duty to an individual that comes onto its land depends upon whether the individual is a trespasser, licensee, or invitee. *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 723 (6th Cir. 2012) (citing *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St. 3d 312 (1996)). In this case, the parties do not dispute that Plaintiffs were business invitees of Defendants. (*See* Doc. 23, PageID 244; Doc. 28, PageID 409).

With respect to invitees, the landowner has a duty to exercise ordinary care by maintaining the premises in a reasonably safe condition. *Andler*, 670 F.3d at 723 (citing *Provencher v. Ohio Dep't of Transp.*, 49 Ohio St. 3d 265 (1990)). A business owner also has a duty to inspect the premises to discovery possible dangerous conditions of which it is unaware and to take precautions to protect invitees from foreseeable dangers. *Davis v. Accor N. Am., Inc.*, No. 1:08-CV-425, 2010 U.S. Dist. LEXIS 40057, at *13-15 (S.D. Ohio Apr. 23, 2010) (citing *Kirchner v. Shooters on the Water, Inc.*, 167 Ohio App. 3d 708 (8th Dist. App. 2006)). Defendants contend, however, that they owed no duty of care to Brenda Goodson because (1) the two-inch rule is applicable; and (2) the change in elevation was open and obvious and there were no attendant circumstances that made it unreasonably dangerous.

1. **<u>The Two-Inch Rule</u>**

Summary judgment is not appropriate on the basis of the "two-inch rule." The "two-inch rule" provides that a difference in elevation of two inches or less in height between two adjoining portions of sidewalk or walkway is considered insubstantial as a matter of law and thus is not

actionable. *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App. 3d 29, 33 (Ohio App. 1994). "Private landowners are not liable as a matter of law for minor defects in sidewalks and walkways because these are commonly encountered and pedestrians should expect such variations." *Gordon v. Dziak*, 2008-Ohio-570, ¶ 41 (Ohio App. Feb. 14, 2008) (citing *Stockhauser*, 97 Ohio App. 3d at 32). In this case, there are genuine issues of material fact as to whether the portion of the sidewalk where Brenda Goodson fell exceeded two inches. Indeed, Defendants concede that the variation between the sidewalk and the Valet Drive where Brenda Goodson claims to have fallen is between two and three inches. (Doc. 23, PageId 242).

### 2. The Open-and-Obvious Doctrine

A landowner has no duty to warn an individual of "open and obvious" dangers and thus is not liable for any injuries that result from such dangers. *Armstrong v. Best Buy Co.*, 99 Ohio St. 3d 79, 80 (2003). The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning" and the owner "may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* A danger is "open and obvious" if it is discoverable or discernible by one acting with ordinary care under the circumstances; it is not necessary that the plaintiff actually have seen the danger. *Galinari v. Koop*, 2007-Ohio-4540, ¶ 13 (12th Dist. App. Sept. 4, 2007); *see also Davis v. Accor N. Am., Inc.*, No. 1:08-CV-425, 2010 U.S. Dist. LEXIS 40057, at *16-18 (S.D. Ohio Apr. 23, 2010) (holding that depth of swimming pool was an open and obvious hazard despite that the slope was not readily visibly because of murky water and despite the lack of safety line). In other words, "'[o]pen and obvious hazards are those hazards that are not concealed and are discoverable by ordinary inspection.'" *Id.* (quoting *Lykins v. Fun Spot Trampolines*, 172 Ohio App. 3d 226, 235 (12th Dist. App. 2007). The inquiry as to whether the

8

danger is open and obvious is one that must be considered objectively, without regard to the plaintiff's conduct in encountering it. *Armstrong*, 99 Ohio St. 3d at 92; *see also Galinari*, 2007-Ohio-4540, ¶13; *Goode v. Mt. Gillion Baptist Church*, 2006-Ohio-6936, ¶ 25 (8th Dist. App. Dec. 28, 2006). The question as to whether a condition is open and obvious generally is one that may be decided as a matter of law, but may, under certain circumstances, be a matter to be resolved by the jury. *Nageotte v. Cafaro Co.*, 160 Ohio App. 3d 702, 711 (6th Dist. App. 2005); *see also Matt v. Ravioli, Inc.*, 2014-Ohio-1733, ¶ 11 (8th Dist. App. Apr. 24, 2014) (citing *Furano v. Sunrise Inn of Warren, Inc.*, 2009-Ohio-3150, ¶ 23 (11th Dist. App. June 26, 2009); *Hudspath v. Cafaro Co.*, 2005-Ohio-6911 (11th Dist. App. Dec. 23, 2005)); *Jackson v. Bd. of Pike County Comm'rs*, 2010-Ohio-4875, ¶ 20 (4th Dist. App. Sept. 28, 2010); *Galinari*, 2007-Ohio-4540, ¶13.

"Attendant circumstances" may serve as an exception to the open-and-obvious doctrine, and may, in some circumstances, create a material issue of fact to preclude summary judgment. *Jenkins v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 16 (10th Dist. App. Nov. 19, 2013); *Ravioli*, 2014-Ohio-1733, ¶ 12; *Jackson*, 2010-Ohio-4875, ¶ 21. There is not a precise definition of "attendant circumstances" under Ohio law. Attendant circumstances have been defined as those that, taken together, contribute to the fall, are beyond the injured person's control, and unreasonably increase the normal risk of harm. *Jackson*, 2010-Ohio-4875, ¶ 21 (citing *Backus v. Giant Eagle, Inc.*, 115 Ohio App. 3d 155, 158 (7th Dist. App. Oct. 31, 1996)). As used in regard to that definition, the phrase refers to all of the circumstances surrounding the event, which may include time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result. *Jackson*, 2010-Ohio-4875, ¶ 21 (citing *Cummin v. Image Mart, Inc.*, 2004-Ohio-2840, ¶ 8 (10th Dist. App. June

9

3, 2004)). A danger is not unreasonable when "people who are likely to encounter that condition may be expected to take good care of themselves without further precautions." *Nageotte*, 160 Ohio App. 3d at 710. The phrase "attendant circumstances" also has been defined as "any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time" so as to create a greater than normal, hence substantial, risk of injury. *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App. 3d 29, 33-34 (2d Dist. App. 1994).

Here, the Court finds that the West Curb where Brenda Goodson is alleged to have fallen is open and obvious.[2] An ordinary person exercising reasonable care under the circumstances is able to view the curb with the naked eye. The photographs of the curb show that the height of the curb increased gradually and that the sidewalk had joints in it that terminated at the West Curb. The sidewalk adjacent to the West Curb was situated next to a valet driveway of a hotel around which there were other plainly visible curbs, and the West Curb was in a place where visitors would expect to find such dangers. Further, there is no evidence presented that any physical object concealed or obstructed the West Curb from view. Although Plaintiffs contend that the West Curb lacked yellow paint and other distinguishing features that could have made the West Curb more obvious, the landowner's duty is "not to be determined by questioning 'whether the [condition] could have been made perfect or foolproof[,]'" as the issue is "'whether the conditions that did exist were open and obvious to the person exercising reasonable care . . . .'" *Jackson*, 2010-Ohio-4875, ¶ 18 (quoting *Orens v. Ricardo's Restaurant*, No. 70403, 1996

---

[2] Although Plaintiffs cite to the testimony of their expert to preclude summary judgment, his opinion that the curb was not open and obvious does not create a genuine issue of material fact. The question of whether a danger is open and obvious is one that generally is a matter of law, and Plaintiffs cannot transform an otherwise open-and-obvious condition into a dangerous hazard through the opinion of an expert. *See Armstrong v. Best Buy Co.*, 99 Ohio St. 3d 79, 83 (2003) (determining condition was open-and-obvious as a matter of law, despite the opinion of the plaintiff's expert that the condition was unsafe).

Ohio App. LEXIS 4944, at * 15 (8th Dist. App. Nov. 14, 1996) (citing *Centers v. Leisure Int'l*, 105 Ohio App. 3d 582, 584 (12th Dist. App. 1995)). While recognizing that other cases are not determinative of the issue here since the inquiry is fact specific, the Court nevertheless points out that it is not alone in holding that an unobstructed height difference between surfaces that are visible to the naked eye upon ordinary inspection are open and obvious. *Sabo v. Zimmerman*, 2012-Ohio-4763, ¶ 18 (11th Dist. App. Oct. 15, 2012) (affirming grant of summary judgment to business owner based on open-and-obvious doctrine where elevation difference between sidewalk and grassy area was visible to the naked eye); *Jackson*, 2010-Ohio-4875, ¶ 23 (affirming summary judgment to business owner based on open-and-obvious doctrine where a reasonable person would have noticed the ramp-sidewalk configuration and would have taken care to avoid stepping off the sidewalk where it abutted the slowly rising ramp); *Jenks v. City of Barberton*, 2005-Ohio-995, ¶¶ 2, 13 (9th Dist. App. Mar. 9, 2005) (affirming grant of summary judgment based on open-and-obvious doctrine where 3 and ¾ inch height difference between connecting pieces of sidewalk was not hidden or concealed from view and was discoverable by ordinary inspection); *Lucas v. Coles Drug Inc.*, No. 92CA12, 1992 Ohio App. LEXIS 6431, at *2 (2d Dist. App. Dec. 17, 1992) (affirming summary judgment for landowner based on open-and-obvious doctrine where six to eight inch drop-off between parking lots was not concealed).[3]

The alleged attendant circumstances, taken together, do not create a genuine issue of material fact to preclude summary judgment. The presence of shadows does not divert the attention of a reasonable person, reduce the amount of ordinary case to be used, or create an unreasonable risk of harm, particularly considering that shadows are a regularly encountered and common circumstance, and the curb existed where visitors would expect to find such dangers.

---

[3] Further, the undisputed evidence shows that Defendants have had no injuries or accidents with pedestrians on the West Curb in 20 years.

Multiple Ohio courts agree with that judgment. *Sexton v. Certified Oil Co.*, 2013-Ohio-482, ¶ 20 (4th Dist. App. Feb. 7, 2013) (rejecting the argument that shadows created an attendant circumstance that made raised concrete unreasonably hazardous, and reiterating that "'if the area was dark and shadowed, as claimed, then such condition itself should have served as a warning to [the plaintiff] to exercise caution'") (quoting *Jackson*, 2010-Ohio-4875, ¶ 24); *Johnson v. Southview Hosp.*, 2012-Ohio-4974, ¶ 17 (2d Dist. App. Oct. 26, 2012) (recognizing that "attendant circumstances do not include regularly encountered, ordinary, or common circumstances") (citing *Williamson v. Geeting*, 2012-Ohio-2849, ¶ 22 (12th Dist. App. June 25, 2012)); *Gordon v. Dziak*, 2008-Ohio-570, ¶ 50 (8th Dist. App. Feb. 14, 2008) ("[A]n argument that an undisclosed presence of shadows near a residence could be dangerous, stretches the attendant circumstances rule beyond reasonable comprehension. . . . This is because a person should not be held liable where he or she had no control over shadows caused by the sun.") (citing *France v. Parliament Park Townhomes*, No. 14264, 1994 Ohio App. LEXIS 1793, at *8 (2d Dist. App. Apr. 27, 1994); *Hess v. One Americana L.P.*, 2002-Ohio-1076, ¶ 37 (10th Dist. App. Mar. 14, 2002)).

As for the argument that the canopy lighting was insufficient to convey an elevation difference, it fails to acknowledge that the insufficient lighting does not divert the attention of a reasonable person so as to reduce the level of care used when leaving the pedestrian sidewalk. Nor is the insufficient lighting so abnormal or unusual that it unreasonably increased the normal risk of a harmful result by a reasonable person exercising ordinary care. "The amount of light in a given area is an open and obvious condition" and is a common and regularly encountered condition. *Jackson*, 2010-Ohio-4875, ¶ 24 (citing *Jeswald v. Hutt*, 15 Ohio St. 2d 224, paragraphs 2 and 3 of the syllabus (1968); *Swonger v. Middlefield Village Apts.*, 2005-Ohio-941,

¶ 12 (8th Dist. App. ar. 4, 2005)); *see also Jenkins v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 17 (10th Dist. App. Nov. 19, 2013) (addressing attendant circumstance of inadequate lighting, and noting that "inadequate lighting acts as a warning itself to proceed with caution"); *Haynes v. Mussawir*, 2005-Ohio-2428, ¶24 (10th Dist. App. May 19, 2005) ("[U]nder the facts of this case, the lack of illumination in the parking lot was not an attendant circumstance that would negate the application of the open-and-obvious doctrine.").

The lack of sufficient contrasting details, such as different coloring, textures, and brightness of the surfaces, likewise do not divert attention away from the pedestrian sidewalk nor do they render the West Curb unreasonably dangerous to a reasonable person exercising ordinary care. As stated above, the landowner is not required to ensure that the condition is foolproof when that condition is discernible upon ordinary inspection and avoided with reasonable care, as is the case here. As the photograph shows, the two surfaces are distinguished by joints in the sidewalk that are not present in the Valet Drive. Further, a transition from a known pedestrian sidewalk to a known Valet Drive intended for vehicles is an open and obvious hazard of which a reasonable person should be aware and for which he or she would exercise ordinary caution. Although Plaintiffs also complain that they were unable to distinguish the two surfaces as a result of the features, they had no difficulty plainly viewing the curb after the fall despite the lack of contrasting details. Other courts addressing the lack of such contrasting features similarly have found them not to constitute attendant circumstances that preclude summary judgment. *Hill v. Western Reserve Catering, Ltd.*, 2010-Ohio-2896, ¶23 (8th Dist. App. June 24, 2010) (recognizing that "dimly lit steps and uniform color between a step and the floor do not render steps unreasonably dangerous, but rather present an open and obvious danger of which the person traversing the steps should be aware") (citing *Orens v. Ricardo's Restaurant*, No. 70403,

13

1996 Ohio App. LEXIS 4944 (8th Dist. App. Nov. 14, 1996); *Kornowski v. Chester Props., Inc.*, No. 99-G-2221, 2000 Ohio App. LEXIS 3001, at *12, *15 (11th Dist. App. June 30, 2000)); *see also Stewart v. AMF Bowling Ctr., Inc.*, 2010-Ohio-5671, ¶ 15 (3d Dist. App. Nov. 22, 2010) ("[A] step hazard has been found to be open and obvious even where the colors of the step and the floor are uniform.").

Finally, the Court does not find that Brenda Goodson's lack of familiarity with the hotel's Sixth Street entrance precludes summary judgment. Her lack of familiarity is not a distraction that would reduce the amount of care exercised. Indeed, her lack of familiarity with the area should increase, rather than reduce, the degree of care an ordinary person would exercise under the circumstances. Further, her lack of familiarity with the area does not aggravate the condition of the West Curb to the point of being unreasonably dangerous. A landowner should not be responsible for an injury caused by an open-and-obvious danger merely because the injured individual was not familiar with the area. The open-and-obvious doctrine applies regardless of whether an individual did or did not observe the hazard, if under an objective view of the facts that hazard was discoverable or discernible upon ordinary inspection, and no attendant circumstances diverted the individual's attention or made the condition unreasonably dangerous. Here, the West Curb was discoverable and discernible, and a lack of familiarity with the West Curb does not change that result.[4]

---

[4] Given that all of the attendant circumstances, taken together, must divert the attention of the pedestrian, significantly enhance the danger or harmful result, and contribute to the fall, an individual's familiarity with a condition, or lack thereof, certainly is a relevant consideration. Indeed, an individual who is familiar with an open-and-obvious condition would have a weaker argument that the attendant circumstances made the condition unreasonably dangerous than an individual who was unfamiliar with the hazard. *See Zuzan v. Shutrump*, 155 Ohio App. 3d 589, 593-94 (7th Dist. App. 2003). In this case, however, the other alleged attendant circumstances did not divert the attention of Brenda Goodson nor were they sufficient to make the condition unreasonably dangerous; as such, her lack of familiarity with the condition standing alone similarly does not pass the threshold.

Accordingly, summary judgment in favor of Defendants on the negligence claims is appropriate.[5]

### B. Loss of Consortium

Defendants move for summary judgment on the loss of consortium claim on the basis that the claim cannot be maintained in the absence of a viable negligence claim. (Doc. 23, PageID 249). *Cole v. Titus*, 2012-Ohio-2310 (8th Dist. App. May 24, 2012) ("To prove a loss of consortium claim, a plaintiff must first prove the underlying tort.") (citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St. 3d 84, 92-93 (1992)).

As the Court has determined that summary judgment in favor of Defendants is appropriate on the negligence claims, the loss of consortium claim likewise cannot be maintained.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED**. As no claims remain pending, this matter shall be CLOSED and TERMINATED from the docket of this Court.

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT

---

[5] In reaching this conclusion, the Court is cognizant that some Ohio courts have suggested that attendant circumstances include such circumstances as "time of day, lack of familiarity with the route taken, [and] lighting conditions . . ." *Galinaro v. Koop*, 2007-Ohio-4540, ¶ 21 (12th Dist. App. Sept. 4, 2007). Nevertheless, it remains true that the attendant circumstance must divert the attention of the injured party and significantly enhance the danger in order for it to constitute an attendant circumstance. *Id.* The Court does not find those circumstances to have diverted Brenda Goodson's attention to reduce the level of care an ordinary person would exercise at the time or to significantly enhance the danger in this case. That is not to say that in some circumstances those conditions could not be viable attendant circumstances. Under the facts of this case, however, they are not.